MRS. RAY TINDALL, WIDOW OF RAY TINDALL, DECEASED, EMPLOYEE, v. AMERICAN FURNITURE COMPANY, EMPLOYER, AND LUMBERMEN'S MUTUAL CASUALTY COMPANY, CARRIER.

(Filed 18 October, 1939.)

**1. Master and Servant § 55d—**

The findings of the Industrial Commission on controverted issues of fact are conclusive on the courts when supported by any competent evidence, even if it should appear that the Industrial Commission also admitted and considered evidence that might be objectionable under technical rules of evidence pertaining to courts of general jurisdiction.

**2. Master and Servant § 40b—**

Conflicting expert testimony on the question of whether the deceased employee died as the result of an occupational disease, caused by exposure to benzol poisoning, arising out of and in the course of his employment, *is held* sufficient to sustain the Commission's award of compensation to the employee's dependent.

**3. Master and Servant § 52e—**

An appellant to the Full Commission has no substantive right to require it to hear new or additional testimony, but the Commission's duty to do so applies only if good ground therefor be shown, Public Laws of 1929,

ch. 120 (59), and its rules in regard thereto, adopted pursuant to sec. 54 of the act, are in accord with the decisions of the Supreme Court relating to the granting of new trials for newly discovered evidence.

**4. Master and Servant § 55g—**

Whether the Superior Court, on appeal from an award of the Industrial Commission, should remand the proceedings to the Commission on the ground of newly discovered evidence rests in its sound discretion.

**5. Master and Servant § 52e—**

The findings of the Industrial Commission that an appellant from an award of the hearing Commissioner had had full opportunity prior to the hearing to prepare its case and obtain the evidence relied on to sustain its motion for leave to offer new or additional evidence, and had not made such motion until after an adverse award had been rendered against it, sustains the ruling of the Commission denying the motion.

**6. Master and Servant § 46a—**

The Industrial Commission is primarily an administrative agency of the State, but in hearing and determining the facts upon which the rights and liabilities of employers and employees depend, it has certain judicial functions which it must exercise accordant with orderly procedure essential to the due administration of justice according to the law.

APPEAL by defendants from *Warlick, J.,* at June Term, 1939, of WILKES. Affirmed.

This was a proceeding under the North Carolina Workmen's Compensation Act to recover compensation for the death of plaintiff's intestate, resulting from an occupational disease claimed to have been caused by benzol poisoning while employed by defendant Furniture Company.

The hearing Commissioner, after finding that the parties were subject to the Workmen's Compensation Act, reported the following material finding of fact: "The Commissioner further finds as a fact that Ray Tindall, deceased, was a regular employee of the American Furniture Company for a period of approximately three years immediately preceding his death on March 21, 1937, and that his particular duties assigned him by the defendant employer during that period of time was that of an employee in the finishing room, which room the Commissioner finds to have been 30 x 50 feet in size, with a ceiling some eight to ten feet from the floor; that this finishing room was partitioned off in one corner of the main factory building and located just outside of this finishing room was the painting or spraying room; that the furniture in the painting or spraying department was sprayed with a paint, a varnish sealer or other liquid compound containing a compound solution of 15% benzol; that immediately after this solution containing 15% benzol was sprayed upon the furniture and while the same was still wet it was rushed into the finishing room, where Tindall worked, as above described, where Ray Tindall and three or four other employees were engaged in

striping the furniture while wet; that while so engaged in the poorly ventilated finishing room the fumes from the 15% benzol emanated from the furniture filling the room with fumes and vapors which at times became so dense that persons working therein could see it like gaseous vapor, rising between them and the light.

"The Commissioner further finds as a fact that during the fall of 1936, the deceased, Ray Tindall, while continuing his work in the finishing room as above described during which time he was working overtime frequently and long hours, began to lose weight and became anemic; that his nose and gums frequently bled; that he lost his appetite, ate very little and ate then not to satisfy a desire for food but to supply strength which he required to do his work; that he became restless, during the Fall of 1936, and was unable to sleep at night.

"The Commissioner finds that all of these conditions continued until February 2, 1937, at which time he became too weak and ill to continue his work so that he stopped work on February 2, rested about his home until March 3, at which time he consulted Dr. H. B. Smith.

"It is the opinion of Dr. Smith, who treated Ray Tindall from March 3 until his death on March 21, 1937, that his death was naturally and unavoidably caused by breathing the benzol fumes during the course of his employment as heretofore described. It is also the opinion of Dr. McNeill, who collaborated with Dr. Smith in the examination, diagnosis, and treatment of Ray Tindall from the time he was admitted to the Wilkes Hospital on the 15th of March, until his death, on the 21st, that Tindall's death was due to and produced naturally and unavoidably from the breathing of the benzol fumes in the course of his employment as heretofore described."

Following a *post mortem* examination by Drs. Smith and McNeill, certain of the internal organs removed from the body were sent to Dr. Bullitt, pathologist at the University of North Carolina, for examination and opinion, and by him later sent to Dr. Carpenter, pathologist at Wake Forest. Both these testified the opinion that the exposure to benzol fumes had nothing to do with the death of Ray Tindall.

The hearing Commissioner, however, found as a fact that the deceased came to his death as a result of breathing the benzol fumes, and that the same resulted naturally and unavoidably in his death from an occupational disease as set out in the Act of 1935, ch. 123, and thereupon made an award in favor of plaintiff in accordance with the provisions of the Workmen's Compensation Act.

The opinion of the hearing Commissioner was filed 17 January, 1938, and defendants gave notice of appeal to the Full Commission, which set the hearing for 10 March, 1938. At the hearing before the Full Commission the defendants filed motion for leave to introduce further or new

evidence and to remand the case for the taking of additional evidence, on the ground that on 15 February, 1938, defendants had caused a test of the air in the room where deceased had worked to be made by Dr. E. C. Markham, a skilled chemist, which test showed that the percentage of benzol or benzine in the air of the room under ordinary working conditions was very small, and they desired to offer this testimony and that of Dr. Heyward M. Taylor, toxicologist and bio-chemist in the School of Medicine, Duke University, to show that the amount of benzine or benzol thus found would not produce or cause the injury and death of Ray Tindall, nor aggravate the heart ailment with which it was alleged he suffered at the time he quit work for defendant employer. The defendants also proposed to offer testimony of two witnesses that the working conditions of the room, as to air and ventilation, were the same on 15 February, 1938, as they were when Ray Tindall worked there.

Upon this motion the Industrial Commission made the following ruling:

"First, the defendants' petition that the case be remanded for additional evidence; and second, that if the case is not remanded, that compensation should be denied.

"The Full Commission has carefully reviewed several times the findings of facts, conclusions of law and the award, and the 130 pages of evidence.

"As to the petition of the defendants that the case be remanded to an individual Commissioner for the taking of additional evidence of experts, the Full Commission points to the fact that disability began in this case February 9, 1937. The defendants received the original medical reports April 8, 1937. The case was first set for hearing at Wilkesboro, July 18, 1937, and was continued at the request of the defendants, as Dr. Bullitt, one of their medical experts, was then in New England. The case was heard September 24, 1937, and the defendants at that time came prepared to the extent of having Dr. Bullitt and Dr. Carpenter, who performed an autopsy on the deceased, to testify in their behalf.

"It appears to the Full Commission that the defendants have had ample time in which to prepare its case to the extent of having all necessary experts, medical or otherwise, present. Certainly the defendants had the benefit of an autopsy study and report.

"Dr. Smith and Dr. McNeill, treating physicians, testified that in their opinions the deceased died from chronic benzol poisoning. Dr. Bullitt testified that the autopsy disclosed a thrombosis which could cause a heavy strain on the heart. Dr. Bullitt gave as his opinion that death was due to the heart condition and terminal pneumonia; that terminal pneumonia often occurs under similar conditions. Dr. Bullitt further testified that benzol didn't cause the thrombi but that benzol

caused or could cause all the conditions except the heart condition and the leucocytosis; and that benzol poisoning could 'contribute greatly to his death.'

"Dr. Carpenter, the other medical expert who testified based upon the autopsy, said that the deceased died 'from chronic heart disease plus infection in his heart and in the blood stream with terminal pneumonia, bronchial pneumonia, which I failed to mention just now in the description of the reports of the case, the bronchial pneumonia.'

"The Full Commission denies the petition to remand the case for additional evidence, and affirms the findings of facts, conclusions of law, and the award of the hearing Commissioner."

Defendants appealed to the Superior Court, where the judgment and award of the Industrial Commission were in all respects affirmed, and defendants appealed to the Supreme Court.

*A. H. Casey and Whicker & Whicker for plaintiff.*
*Henderson & Henderson and Geo. M. Chapman for defendants.*

DEVIN, J. The defendants challenge the correctness of the judgment below upon two grounds: (1) That there was not sufficient competent evidence to sustain the award, and (2) that the court should have allowed their motion and application for leave to introduce further or new evidence before the Full Industrial Commission, or a hearing Commissioner.

1. In accord with the provisions of the Workmen's Compensation Act, it has been established by the uniform decisions of this Court that the findings of fact made by the Industrial Commission, when supported by competent evidence, must be held conclusive on appeal, and not subject to review. *Lassiter v. Telephone Co.*, 215 N. C., 227; *Porter v. Noland Co.*, 215 N. C., 724; *Plyler v. Country Club*, 214 N. C., 453. And the application of the rule of the conclusiveness of the findings of the Industrial Commission as to controverted issues of fact, when based on competent evidence, is not defeated by the fact that some of the testimony offered may be objectionable under the technical rules of evidence appertaining to courts of general jurisdiction, as was pointed out in *Maley v. Furniture Co.*, 214 N. C., 589, and *Consolidated Edison Co. v. National Labor Relations Board*, 305 U. S., 197. Here the appellant noted certain exceptions to the hearing Commissioner's rulings on the reception of testimony, but we find them without merit. There was sufficient competent evidence to support the findings of the Commission that the deceased came to his death as a consequence of breathing benzol fumes in the regular course of his employment, and that his death resulted from an occupational disease caused by exposure to benzol poisoning as a part of

his employment, within the provisions of ch. 123, Acts of 1935, thus constituting an injury by accident arising out of and in the course of his employment by defendant Furniture Company.

2. Appellants complain that the Industrial Commission denied their motion for leave to offer new or additional evidence, and except to the judgment of the Superior Court affirming the judgment and award of the Industrial Commission.

The Workmen's Compensation Act (Acts 1929, ch. 120) provides that the Industrial Commission or any of its members shall hear the evidence and determine the dispute in a summary manner. The award and statement of the findings of fact are required to be filed and a copy sent to parties (sec. 58). If proper application be made, the Full Commission "shall review the award, and, if good ground be shown therefor, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award" (sec. 59).

There is nothing in the Workmen's Compensation Act that gives to a party, against whom an award has been made by the hearing Commissioner, a substantive right to require the Full Commission to hear new or additional testimony. It may, and should, do so if the due administration of justice requires. But the duty to receive further evidence, in addition to reviewing the award, applies only if good ground therefor be shown.

Here the appellants waited until after notice of award against them by the hearing Commissioner before making tests of the quantity of benzol under working conditions in the room where deceased had worked a year before.

In the Superior Court, upon appeal from an award by the Industrial Commission, the court has power in proper case to order a rehearing, and to remand the proceeding to the Industrial Commission, on the ground of newly discovered evidence, but this is a matter within the sound discretion of the court. *Byrd v. Lumber Co.,* 207 N. C., 253, 176 S. E., 572; *Butts v. Montague Bros.,* 208 N. C., 186, 179 S. E., 799. The record does not disclose that motion for remand for rehearing by the Industrial Commission was made in the Superior Court. There was no evidence of abuse of discretion.

The rules of the Industrial Commission, adopted pursuant to sec. 54 of the Workmen's Compensation Act, relative to the introduction of new evidence at a review by the Full Commission, are in accord with the decisions of this Court as to granting new trials for newly discovered evidence. *Johnson v. R. R.,* 163 N. C., 431, 79 S. E., 690; *Bullock v. Williams,* 213 N. C., 321, 195 S. E., 791; *Farris v. Trust Co.,* 215 N. C., 466; *Winslow v. Carolina Conference Assn.,* 211 N. C., 571, 191 S. E., 403.

The Industrial Commission is primarily an administrative agency of
the State, charged with the duty of administering the provisions of the
Workmen's Compensation Act, but, in hearing and determining facts
upon which the rights and liabilities of employers and employees depend,
it exercises certain judicial functions to which appertain the rules of
orderly procedure essential to the due administration of justice according
to law. *Hanks v. Utilities Co.,* 210 N. C., 312, 186 S. E., 252.

The facts found by the Industrial Commission and assigned as ground
for the denial of defendants' motion for leave to offer new or additional
evidence, amply support the ruling. There was no error in the judg-
ment of the Superior Court.

Judgment affirmed.